# E. Lillian Jurisch and E. May Cokely *v.* The Sterling Cycle Works, Appellant.

*Constables—Sale—Advertisement—Act of March* 20, 1810, *sec.* 11.

A constable's sale of personal property under the Act of March 20, 1810, 5 Sm. L. 167, sec. 11, is not invalid by reason of the fact that one of the three advertisements required by the act was posted in a ward other than that of the residence of either the defendant in the execution or the constable.

Where there is no evidence of fraud or collusion a constable's sale will not be set aside because the execution creditor was the only actual bidder, and the goods were struck down to him at a sum far below their value.

Argued Feb. 21, 1899.    Appeal, No. 139, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., May T., 1897, No. 1010, on verdict for plaintiffs.    Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ.    Affirmed.

Sheriff's interpleader under the Act of April 10, 1848, P. L. 450, to determine the title to certain personal property, consisting of bicycles, bicycle supplies, guns, ammunition and general sporting goods, levied on in execution by the defendant in these proceedings, as the property of A. W. Jurisch, while in his apparent possession, and claimed by E. Lillian Jurisch and E. May Cokely, the plaintiffs, as their property.    Before ARCHBALD, P. J.

The facts appear by the charge of the trial court.

At the trial the defendants offered to prove by C. F. Wagner the division lines between the eighth and the sixteenth wards of the city of Scranton, for the purpose of showing that the places where the constable posted the notices or advertisements of the constable's sale were in two wards, namely, one notice in the sixteenth and two notices in the eighth ward; and for the further purpose of showing that the advertisements or notices of the sale put up by the constable were improperly put up, and that the sale made after such notice was invalid and irregular, and that no title passed to the purchaser by virtue of such sale.

Plaintiffs objected to the offer as immaterial.

By the Court: I consider the testimony as immaterial. I therefore sustain the objection.    Bill sealed. [1]

The court charged in part as follows :

On March 23, of this year the Sterling Cycle Works recovered a judgment against A. W. Jurisch in this court for something over $1,200, and issued an execution upon it and levied upon certain goods consisting of a stock of sporting goods, I believe they call them, bicycles and bicycle appointments, and all that, which were in the apparent possession of A. W. Jurisch.    When the sheriff made the levy, however, he was met with a claim by Mrs. Cokely and Miss Lillian Jurisch, sisters of A. W. Jurisch, that the goods were theirs, and thereupon the sheriff, pursuing what the law directs, came into court here and asked that these parties who had made claim to the goods in

that way should substantiate as against these creditors who had levied upon the goods as belonging to Mr. Jurisch, the claim which they had thus made. That shows how the parties are here; Mrs. Cokely and Miss Jurisch are the plaintiffs; they claim that the goods are theirs; the defendant is the Sterling Cycle Works, and it claims that the goods belong to Mr. Jurisch. If the latter is true, then the cycle works is entitled to go on with its levy and sell these goods out and realize what it can of its debt against Mr. A. W. Jurisch. If the goods, however, belong to Mrs. Cokely and her sister, then these parties are not entitled to sell them. If you find one way, you find for the defendant; if you find the other, you will find for the plaintiffs.

The way the plaintiffs claim these goods is this: It is admitted that the goods in dispute prior to October 19, 1896, belonged to A. W. Jurisch, but upon that date Mrs. Cokely and her sister obtained judgments against their brother, A. W. Jurisch, before Alderman Fuller of the sixteenth ward of Scranton, and executions on their judgments were put in the hands of Constable Bates, who levied upon these same goods and sold them out, and at that sale Mrs. Cokely and her sister, Miss Jurisch, as it is claimed, became the purchasers. If that, under the facts of the case, conferred title to these goods upon them, then the goods belonged to them and they could not be disturbed in their possession or enjoyment. The whole case then turns upon the validity of the constable's sale. . . .

[The executions were put in the hands of Mr. Bates; he says that he advertised them. The law requires, of course, that a sale by a constable shall be duly and properly advertised. He says that he put up, as I recall his testimony, at least three public notices. That is in conformity with the law. The law does not require more. It might require more very properly, because in a large place like this a few notices of that kind are not likely to attract very much attention; but if three notices were put up that was sufficient; that was a compliance with the law, and we have nothing to contradict it.] [2] It is claimed, however, that after the levy the store was not closed, and that is dwelt upon as another circumstance. It is said that the business went right on; that Mr. Jurisch made sales of goods, and persons are produced here who say that they

went in there and not only made purchases themselves, but saw others. If that were so, that would be contrary to the law; it would be quite a strong circumstance looking toward fraud and collusion. But it is denied. The testimony of Mr. Jurisch is, and of the young men who were working there, that they were told to make no sales, except those that were indispensable, and by that is meant only such sales as were necessary to accommodate customers who were there to get their bicycles repaired, and Mr. Jurisch carried on quite a repair shop for bicycles, bicycles that were sold coming back to be put in shape again by him. If that was the case, if that was observed, even though the store was not closed, I would not see anything of any great moment in it; but if the other be true, if the levy upon this store was without closing the store and the business all went on just as though there had been no levy, two things would be the result of that; if a man's store is shut up and a notice put upon it that it is in the hands of a constable or sheriff, all those in the neighborhood are likely to see it, the public have their attention attracted to it, parties who would be interested in being bidders at such a sale have their attention attracted and would prepare themselves, as we would suppose, to come and bid upon the property so that it would realize what it ought to. While on the other hand, if the contrary is the case, if the store is not closed, if it goes right on to-day just as it did yesterday, parties going in there and buying what they want, no sign up, nobody's attention is attracted to it, nobody knows that there is to be a sale, and as a result naturally not attracting attention, the thing would be likely to be sacrificed. Furthermore, it would be just like a step a party would be likely to take who wanted not to make a true sale, but wanted to make a collusive sale; who wanted to get the goods in their possession without attracting other bidders or having anybody come in and make bids at the sale who would interfere with it. Several of the neighbors about there, some of them in the same business, who would be naturally interested to buy at such a sacrifice sale as is likely to occur in any forced judicial sale, did not know about it. Mr. Parker, who is in the bicycle and sporting business across the street, said he didn't know until the sale was nearly through.

By Mr. Scragg: At 8 o'clock in the morning.

By the Court: While he fixes the hour, he says **until the sale was nearly through.** And so with regard to others, parties who, like Mr. Ritz, and some of the other customers, going in there constantly, state they saw no difference, no change, nothing to give notice of any proposed sale.

[Then the next step would be, how was this sale conducted? I must say with regard to that, the testimony all is that it was fairly conducted; a suggestion that it was not is hardly sustained by the evidence. Parties were there, while they were not numerous, yet whoever was there had a fair chance to bid, and there were other bids besides those of Mr. Zimmerman representing these ladies. Mr. Foote testifies to that, and he is a witness on the part of the defendant, and there is nothing to show, as I take it, that there was anything but a fair sale. There is some testimony, I believe, by some one, I think it was Mr. Kemmerer, who was in there towards the last of the sale, about some one buying goods in one part of the store while the sale was going on in another, but that is explained by showing that those goods had already been sold by the constable and Mr. Jurisch was merely making a retail sale for the parties who had bought in the goods. The mere circumstances that these goods were bought in for a small amount has very little weight in my mind (perhaps it may have more in yours), because that is always the result of a forced sale.] [3] People, if they go to buy in that way, have got to buy according to the judgment of the moment, and if they buy what is worthless they have no chance of remedying it, and that affects all bidding of that kind; they go at a sacrifice, they are sometimes called a sacrifice sale.

Defendant's points and the answers thereto among others were as follows:

1. The duties of a constable, so far as respects the execution of civil process, depends on the acts of assembly giving jurisdiction to justices of the peace; these acts are consolidated in the act of March 20, 1810, and the duties of the constable on an execution issued by a justice of the peace are defined and governed by the 11th section of that act. *Answer:* Refused. [4]

2. The duties of a constable on an execution issued by an alderman are the same as those on an execution issued by a justice of the peace, and are defined and governed by section 11 of the act of March 20, 1810. *Answer:* Refused. [5]

3. Section 11 of the act of March 20, 1810, provides that a constable shall execute an execution directed to him by levying the debt or demand and costs of the defendant's goods and chattels, and by virtue thereof shall within the space of twenty days ensuing expose the same to sale by public vendue, having given due notice of the same by at least three advertisements, put up at the most public places in his township, ward or district. This is the law governing a constable in the execution of a writ of execution and must be complied with in order to make a sale on such execution valid. *Answer :* Refused. [6]

4. In order to make a valid sale of goods and chattels of a defendant levied on and sold by virtue of an execution directed to a constable, he, the constable, must give due notice of the sale of the same by at least three advertisements put up in his township, ward or district ; and unless such notice of such sale is given, the sale will be invalid and a purchaser thereat will not take title to the goods and chattels sold thereat. *Answer :* Refused. [7]

5. The undisputed evidence in this case is that Constable Bates, who sold the goods and chattels of A. W. Jurisch on October 26, 1896, to the plaintiffs in this case by virtue of an execution issued by Fred Fuller, alderman of the sixteenth ward of the city of Scranton, and directed to him, was, at the time of the levy, made on the goods and chattels of the said A. W. Jurisch on October 20, 1896, and at the time of the sale of the same to the plaintiffs on October 26, 1896, constable of the sixteenth ward of the city of Scranton, and that the defendant in said execution, the said A. W. Jurisch, at the time of said levy and sale resided in the thirteenth ward of the city of Scranton, and that the goods and chattels of the said A. W. Jurisch sold as aforesaid were, at the time of the levy and sale of same, contained within a store in the Hotel Jermyn building in the eighth ward of the city of Scranton. *Answer :* Refused. [8]

6. The undisputed evidence in this case is that Constable Bates put up three notices or advertisements of the sale of the goods and chattels of A. W. Jurisch levied on by him by virtue of the execution issued to him by Alderman Fuller in the following places : One on the northerly side of Linden street between Washington and Wyoming avenues in the sixteenth ward of the city of Scranton ; a second one on the southerly

side of Linden street near the corner of said Linden street and Penn avenue in the eighth ward of the city of Scranton, and a third one at the corner of Spruce street and Franklin avenue in the eighth ward of the city of Scranton. *Answer:* Refused. [9]

7. The Constable F. A. Bates did not put up said notices or advertisements in accordance with the law. *Answer:* Refused. [10]

8. The sale of the goods and chattels of A. W. Jurisch on October 26, 1896, to the plaintiffs in this case, was invalid and void, and they acquired no title to said goods and chattels by virtue of said alleged sale; and the verdict should be for the defendant. *Answer:* Refused. [11]

9. If the jury find from the evidence that plaintiffs, by their attorneys, were the only actual bidders at the sale of the goods and chattels of A. W. Jurisch on October 26, 1896, and that said goods and chattels were struck down to them at a bid greatly below their value, then the presumption of collusion between the plaintiffs and officer selling is irresistible and conclusive and is sufficient to invalidate the sale, and the verdict should be for the defendant. *Answer:* Refused. [12]

10. If the jury find from the evidence that plaintiffs, through their attorney, had absolute control of the sale of A. W. Jurisch's goods and controlled the same for their own benefit, and that there was not a fair competition of bidders at said sale, then such sale was collusive and invalid, and the verdict should be for the defendant. *Answer:* I find no evidence to sustain a suggestion that this sale was not fairly conducted at the time. I therefore refuse the point upon that ground. [13]

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2, 3) portions of charge as above, quoting them; (4–13) answers to various points.

*W. S. Diehl,* of *Watson, Diehl & Kemmerer,* for appellant, cited McMichael v. McDermott, 17 Pa. 353; Ricketts & Stewart v. Unangst, 15 Pa. 90.

*R. A. Zimmerman* and *John F. Scragg,* for appellees, cited Com. v. Lentz, 106 Pa. 643.

PER CURIAM, March 13, 1899:

There was no error in excluding the offer referred to in the first specification; nor in charging the jury as recited in the second and third specifications. There is nothing in either of these that requires special notice.

The subjects of complaint in the remaining ten specifications are the refusal of the court to affirm defendant's points (one to nine inclusive, and thirteen) recited therein respectively.

We have considered the record with reference to these specifications, and are satisfied that each of the points was rightly refused.

The plaintiffs' right to a verdict depended on questions of fact which were clearly for the jury. These questions were fairly submitted to them, by the learned president of the court below, in a clear, comprehensive and fully adequate charge, of which the defendant company has no just reason to complain, and they found in favor of the plaintiffs. The judgment on the verdict should not be disturbed.

Judgment affirmed.